NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 07-332 (HAA) |
| ) | |
| RUSSELL CHRISTIE ) | **OPINION AND ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on the post-trial motion (Doc. No. 87) to dismiss the superseding indictment filed by Defendant Russell Christie. In this motion, Defendant seeks to vacate the jury's unanimous verdict and dismissal of the superseding indictment on the basis of outrageous government conduct.[1] For the following reasons, this Court will deny Defendant's motion to dismiss the superseding indictment and will not disturb the jury verdict.

I.   Background

On November 24, 2008, a unanimous jury found Christie guilty of eight criminal counts involving child pornography. Six of the counts involved advertising of child pornography, premised upon six discrete postings to the www.NAMGLA.net website ("NAMGLA website") that provided links to video and still-image depictions of child pornography, in violation of 18

---

[1]Pursuant to this Court's revised scheduling order of December 10, 2008, the present motion to dismiss incorporates Defendant's unsupported motion for acquittal (Doc. No. 82) filed on December 2, 2008.

1

U.S.C. § 2251(d)(1)(A) and (e).  Christie was also found guilty of one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography in violation of; 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

      Before trial, this Court issued an Opinion and Order on August 13, 2008 (hereinafter "2008 Order") denying, *inter alia*, Christie's pre-trial motions to dismiss portions of the superseding indictment and suppress certain pieces of evidence stemming from the FBI's warrantless seizure of Defendant's home while awaiting a supplemental search warrant.  *United States v. Christie*, 570 F. Supp. 2d 657, 659 (D.N.J. 2008).  Additionally, the Court denied Defendant's request for a hearing to determine whether the superseding indictment should be dismissed on the basis of alleged outrageous governmental conduct and rejected Christie's argument that the Government unlawfully accessed his internet protocol ("IP") address and other private information.  *Id.* at 675, 690.

      Many of Christie's pre-trial arguments focused on the Government's lack of control over Jerrod Lochmiller, the administrator of the NAMGLA website who had provided the government with access to members-only portions of the website, and who had continued to operate the website during the investigation.  Subsequent to his cooperation, the Government dropped certain fraud charges that were pending against Lochmiller.  Throughout the investigation, arrest, and prosecution of Christie, the Government could not locate Lochmiller, corresponding with him only through his attorney, George Buehler.  The allegations concerning the government's limited interaction with Lochmiller were later corroborated at trial, and, despite reasonable efforts, the

government was not able to produce Lochmiller at trial.[2]

Following the conclusion of his trial, on January 5, 2009, Christie filed a motion to dismiss the second superseding indictment on the basis of what he alleged constituted outrageous government conduct. Specifically, Defendant alleged outrageous conduct based on the Government's (1) unlawful specialized access to Defendant's (and others') IP address and other private information, and (2) lack of control over informant Lochmiller, whom they permitted to continue running the NAMGLA website.

**II.     Motion to Dismiss**

Although "a criminal defendant may raise a due process challenge to an indictment against [him] based on a claim that the government employed outrageous law enforcement investigative techniques," *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998), our Circuit has recognized that "because of the extraordinary nature of the doctrine, the judiciary has been 'extremely hesitant' to uphold claims that law enforcement conduct violates the Due Process clause," *id.* at 230 (citation omitted); *see also Christie*, 570 F. Supp. 2d at 673–74 (noting that many circuits, including the Third Circuit, have eschewed dismissal of an indictment based on the defense in recent years).

When this Court first addressed Defendant's outrageous conduct argument, it found Christie's allegations distinguishable from the "egregious" conduct found outrageous in two prior

---

[2]This Court issued an oral ruling on November 6, 2008 regarding the Government's obligations to produce Lochmiller for trial. Relying on *Roviaro v. United States*, 353 U.S. 53, 64–65 (1957) and *United States v. Moore*, 446 F.2d 448, 450 (3d Cir. 1971), this Court concluded that Christie was entitled only to the Government's reasonable efforts to locate and produce Lochmiller for trial. At the time, the Court was satisfied that the Government had made reasonable efforts to locate Lochmiller, and this Court instructed the Government to continue with such efforts.

Third Circuit opinions, *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978) and *United States v. West*, 511 F.2d 1083 (3d Cir. 1975):

> In *Twigg*, the government directed a convicted felon striving to reduce the severity of his sentence to create a drug lab. The government further encouraged the lab's creation by providing a farmhouse as a secure location, twenty percent of the glassware needed, and, importantly, the indispensable chemical ingredient necessary to make the methamphetamine. . . . In other words, "*Twigg* . . . involved a quite egregious case of government overinvolvement in which the government's undercover operative essentially concocted and conducted the entire illicit scheme." *Nolan-Cooper*, 155 F.3d at 230.
>
> Here, Christie does not allege that he was contacted by Lochmiller or an agent of the FBI, nor does he allege that they encouraged him to engage in the possession, receipt, or advertising of child pornography. . . . This [case] can hardly be considered analogous to *Twigg* where the government essentially created the illegal product, had its undercover operative give the illegal product to the unwitting defendant, and then arrested the defendant after receiving a call from the operative that the defendant had the illegal product in his possession. There is no suggestion that the FBI created the child pornography or gave it to Christie to post on NAMGLA so that he could be charged with advertising, receipt, or possession.
>
> . . . *West* is no better an analogue than *Twigg*. . . . *West* involved "a confederation of two government agents, one an informer who . . . actually supplied the narcotics in question and the other an undercover officer who, as prearranged with the informer, bought this contraband from the accused third person whom the informer had persuaded to join with him in a selling venture." *West*, 511 F.2d at 1085. . . . There is nothing to suggest that Lochmiller and the FBI conspired to produce or distribute child pornography, and then placed such illicit material in Christie's hands so as to catch and charge him with a crime. On the contrary, it appears that Christie independently sought out NAMGLA and actively participated in the exchange of child pornography through that website. It further appears as though the FBI simply sat, figuratively, in the corner of the room and observed Christie engage in illegal activity of his own free will.

*Christie*, 570 F. Supp. 2d at 674–75.

The 2008 Order further categorically rejected Christie's bizarre contention—based on an interpretation of the New Jersey Constitution—that the Fourth Amendment of the federal Constitution recognizes a legitimate expectation of privacy in one's internet subscriber information.  *Id.* at 690 (citing *State v. Reid*, 194 N.J. 386, 396 (2008) (collecting federal cases finding no expectation of privacy in internet subscriber information)).  Likewise, the Court dispatched with Christie's unsupported speculation that the Government *may* have utilized Lochmiller's website-monitoring tools to unlawfully access private information in violation of 18 U.S.C. § 2518, noting that a Government affidavit specifically refuted the suggestion that the FBI case agent reviewed private messages sent by Lochmiller.  *Id.* at 671–72.

With the present motion, Christie does not contest any of the circumstances this Court found distinguishable from the outrageous conduct in *Twigg* and *West*.  Indeed, undisputed testimony at trial corroborated the fact that Christie had to first provide child pornography in order to receive specialized access to the most explicit content on the NAMGLA website, and that he kept a vast collection of child pornography in his home.  (Tr. 11/12/08 (Macfarlane) at 82–83; Tr. 11/18/08 (Cristiano) at 161:15–20.)  Rather, Christie recasts the same arguments that the Government's unlawful access to private information and its improper usage of an unknown informant constitutes outrageous government conduct.  The Court is not persuaded.

### A.  Unlawful Access of Private Information

Christie's argument that the government unlawfully obtained private information in violation of the Fourth Amendment and 18 U.S.C. § 2518 is without merit.  This Court previously dispatched with Christie's constitutional argument, noting the consensus of the federal courts that have considered the issue that there is no legitimate expectation of privacy in one's

5

internet subscription information.  *Christie*, 570 F. Supp. 2d at 690; *see also Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties. . . . Courts have applied this principle to computer searches and seizures to conclude that computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator.") (citations omitted).  As before, Christie presents no relevant authority for the proposition that his IP address is subject to Fourth Amendment protection, and this Court must reject this argument.

Similarly, Christie's blanket assertion that the Government's unfettered *access* to the NAMGLA website violated Title I of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§2510–22, does not establish outrageous conduct.  In addition to the unsupported argument that the Government obtained his private communications, Christie appears to contend, for the first time, that 18 U.S.C. §§ 2510 and 2518 treat IP addresses as protected "electronic communications," the "interception" of which requires a warrant or court order under Title I of the ECPA.  Because the FBI did not receive such authorization prior to receiving access to the NAMGLA website, Christie ostensibly argues that any evidence received by the Government through this access, including his IP address, must be suppressed under 18 U.S.C. § 2515 as a violation of Title I.  Christie provides no authority for the proposition that a Title I violation constitutes outrageous conduct warranting dismissal of an indictment, nor does he present any authority suggesting that IP addresses qualify as protected communications under Title I.

Presuming this to be Christie's argument, the Court notes that Defendant should have raised this contention at some point prior to a post-trial motion to dismiss.  However, even if

Christie had properly raised this issue before or during his trial, this defense would have been baseless. The IP addresses obtained by the Government in this case were stored on the server for the NAMGLA website, much the same as the accompanying message board posts of the website members. Our Circuit in *Fraser v. Nationwide Mutual Insurance Co.* joined the other circuits that have considered the matter in concluding that Congress's definition of "intercept" in the ECPA only extended to the contemporaneous receipt of the transmission of a communication. 352 F.3d 107, 113 (3d Cir. 2003) (citations omitted). Hence, the protections of Title I did not apply to the searches of electronically stored communications, which are governed under Title II of the ECPA, 18 U.S.C. § 2701, *et seq. See Fraser*, 352 F.3d at 114–15 (finding that Title I did not apply to the search of email stored on a company server); *see also Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 460–63 (5th Cir. 1994) (deeming Title I inapplicable to email stored on a company's computer that operated an electronic bulletin board); *United States v. Reyes*, 922 F. Supp. 818, 836–38 (S.D.N.Y. 1996) (holding that Title I did not govern searches of phone numbers stored in the memory of a paging device's memory). Thus, if any provision of the ECPA might have protected Christie's IP information, it would have been Title II, which, unlike Title I, does not provide for the suppression of evidence obtained from unauthorized searches. *Compare* 18 U.S.C. § 2515 *with id.* §§ 2701(b), 2708; *see also Reyes*, 922 F. Supp. at 837. Although this Court highly doubts that the violation of a statute that does not provide for the lesser remedy of excluding evidence could qualify as outrageous conduct barring prosecution on the basis of evidence wrongfully obtained, it is not for this Court to determine the viability of a defense not raised by Defendant. For present purposes, this Court is satisfied that Christie has not demonstrated a violation of § 2518.

Nevertheless, Defendant repeatedly bemoans the Government's administrator-level "access" to the NAMGLA website, which enabled it to see the public posts of members to various message boards and record their IP addresses. Christie also asserts that Department of Justice officials and FBI agents participating in the investigation expressed doubts regarding whether or not the FBI could "take over" the website without a warrant. (Christie Br. at 19–20.) However, as this Court previously noted in the 2008 Order, nowhere does Christie, who bears the burden of establishing the outrageous conduct defense, allege that the Government used this "access" to obtain his private communications. Indeed, only the Government has come forth with information concerning the receipt of private communications. During testimony at trial, Assistant U.S. Attorney Wesley Hsu indicated that he received an email on or about December 19, 2005 from Buehler, Lochmiller's attorney, containing what he believed were private communications of NAMGLA members. Hsu immediately rebuked Buehler, informing him that the Government was not permitted to receive such communications and instructing him that Lochmiller was not to capture such communications on behalf of the Government. (Tr. 11/20/08 (Hsu) at 20:29–30.) Nothing about this event, which appears to have been an isolated incident, contradicts the Government affidavit attesting that the FBI case agent for this case never reviewed private messages sent by Lochmiller, *see Christie*, 570 F. Supp. 2d at 671–72, or otherwise demonstrates a concerted effort by the Government to access Christie's (or others') private communications. The Government's access to the NAMGLA website did not constitute outrageous conduct.

### B. Improper Use of Unknown Informant

In addition to his privacy-based arguments, Christie contends that the FBI's use of Lochmiller as an informant in the NAMGLA investigation contravened the Attorney General's Guidelines Regarding the Use of Confidential Informants ("Guidelines"), because the FBI never met Lochmiller, a known fugitive, and did not control his activities on the NAMGLA website. (Christie Br. at 4.) But even if this Court accepts Defendant's understanding that the Guidelines applied to the FBI's use of Lochmiller, a matter which was disputed at trial,[3] the FBI's failure to follow agency guidelines, without more, does not constitute outrageous conduct worthy of setting aside a conviction. First of all, as before, Christie's allegation in no way implicates the Government in participating in the illegal activities of creating or distributing child pornography. To put in terms of *Twigg* and *West*, Christie simply provides no evidence suggesting that the Government provided the equivalent of the drugs, the lab, and the proverbial key as in *Twigg*, or that the Government-informant tandem both supplied and purchased the illicit goods as in *West*. As this Court previously noted in the 2008 Order, the government was a mere passive observer of Christie's illegal activities on the NAMGLA website.

Furthermore, Christie fails to draw a connection between his privacy rights and the Guidelines. Generally speaking, due process does not require the exclusion of evidence obtained by the government's failure to follow agency guidelines where the guidelines are not required by the Constitution or federal law. *United States v. Caceres*, 440 U.S. 741, 749–53 (1979) (reversing district court's exclusion of evidence, in the case of attempted bribery of an IRS agent

---

[3]Under cross-examination, Special Agent Macfarlane disputed that Lochmiller qualified as a confidential informant under the Guidelines. (Tr. 11/13/08 (Macfarlane) at 82–93.)

by a taxpayer, where the agent violated IRS regulations by conducting electronic surveillance without prior approval by the Department of Justice); *see also Pa. Steel Foundry & Mach. Co. v. Sec'y of Labor*, 831 F.2d 1211, 1218–19 (3d Cir. 1987).  In this case, Christie has made no showing that the Guidelines are required by the Constitution or federal law.  Consequently, even if the government did violate its own regulations for dealing with confidential informants, such non-compliance does not provide a cognizable due process basis for dismissing the indictment.

Ultimately, it appears to this Court that Christie's real argument is that the Government *should* have conducted its investigation differently.  It is not uncommon for convicted parties to wish that law enforcement proceeded differently; perhaps if they had, the guilty parties would not have been caught with their hands in the cookie jar.  While it is certainly true that the Government *could* have conducted the investigation in a different manner in this case, and that a different approach *might* have reduced the overall proliferation of child pornography more than the methods actually utilized, it is not for this Court to dictate best practices in the Government's war against the exploitation of children.  It is only for this Court to decide whether the Government's conduct in this case was so outrageous that any resulting conviction would offend this nation's longstanding commitment to due process of law.  Here, the Government did not bake the cookies, provide the cookie jar, or put Defendant's hand in the cookie jar; the Government merely found the cookie jar sitting in public and waited for a real-life cookie monster to lift the lid.  This Court will deny Christie's motion to dismiss.

### III.     Conclusion & Order

For the foregoing reasons, Defendant's motion (Doc. Nos. 82 and 87) is hereby DENIED.

Dated: March 17, 2009
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.